# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2185 | **DATE** | 7/28/2003 |
| **CASE TITLE** | ARCH DEVELOPMENT CORP. V. BIOMET, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Plaintiff's motion to confirm arbitration award is granted. Enter Memorandum Opinion and Order.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 30 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | DW | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ARCH Development Corporation,

    Petitioner,

v.

Biomet, Inc.,

    Respondent.

No. 02 C 9013
No. 03 C 2185
(Related Cases)

Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Petitioner ARCH Development Corporation seeks confirmation of arbitral awards arising out of a dispute with Biomet, Inc. Biomet in turn, seeks to vacate the awards, primarily alleging that the Arbitrator exceeded his authority and engaged in misconduct. For the reasons set forth below, I grant ARCH's motion to confirm and deny Biomet's motion to vacate DOCKETED

JUL 3 0 2003

Factual Background

ARCH is an affiliate of the University of Chicago established to facilitate the commercialization of technology developed by University of Chicago faculty members. Among other things, ARCH's responsibilities include entering into intellectual-property licenses with private industry and prosecuting patents on the inventor's behalf. Biomet is a publicly traded corporation that manufactures and markets products used primarily by musculoskeletal medical specialists in both surgical and non-surgical therapy, including orthopedic devices such as prosthetic knees and hips.



In 1988, Biomet approached Dr. Henry Finn, a University of Chicago faculty member, expressing interest in licensing technology relating to an artificial knee now popularly known as the "Finn Knee." That matter was referred to ARCH. On March 31, 1989, ARCH and Biomet entered into a license agreement (the "License Agreement."). Section 10.8 of the License Agreement required the parties to arbitrate any disputes "in accordance with the rules of the American Arbitration Association [the 'AAA']."

Biomet commenced manufacturing and selling the Finn Knee. Though royalties in the early period were low, by 1999 they amounted to some $400,000 per year. Biomet continued paying royalties to ARCH covering sales through September 1999. However, in January 2000, Biomet told ARCH that its obligation to pay royalties had ended as of March 31, 1999 and that no further payments would be forthcoming. In addition, Biomet stated that its last two royalty payments (covering the period April 1, 1999 through September 30, 1999) had been made in error and that it reserved the right to seek a refund.

ARCH disputed Biomet's interpretation of the License Agreement's termination provisions. The parties attempted to settle the matter but were unsuccessful. ARCH therefore initiated an arbitration proceeding in August 2000 by filing a Statement of Claim with the AAA as the License Agreement provides. ARCH's Statement of Claim alleged that Biomet had breached the Agreement by refusing to pay royalties due ARCH under the Agreement. ARCH also sought an accounting, the payment of all past due royalties, and an injunction restraining Biomet from further making, using or selling licensed products without paying royalties to ARCH as provided for in the Agreement. On September 28, 2000, Biomet filed its Answer, Affirmative Defenses and Counterclaims to the Arbitration Demand. Biomet did not object to

2

the arbitrator's jurisdiction or to the scope of the arbitration. Indeed, Biomet filed a counterclaim, seeking a refund of the last two royalty payments, or, in the alternative, of all royalty payments, and also a declaration that it was not infringing ARCH's patent – even though ARCH had never asserted Biomet was infringing. The parties agreed that D. Peter Hochberg, a patent lawyer who is a member of the AAA's Commercial Panel, would serve as the arbitrator. In addition, it was decided amongst the parties, the AAA and the Arbitrator that the Arbitrator was to render a "reasoned award." The parties then proceeded to take extensive discovery.

On October 29, 2001, the parties filed cross-motions for summary judgment. In addition, each party submitted several letters to the Arbitrator in response to his questions. On September 12, 2002, the Arbitrator issued an award (the "September Award"). The September Award initially discussed the main questions to be decided and then went on to cite the relevant portions of the License Agreement, including the terms defining the license grant and the relevant definitions. It then stated that the Arbitrator has "read all of the pleadings and considered all of the evidence" and made eight detailed findings and conclusions:

1. The entire License Agreement must continue until the expiration of the '701 patent, namely, on December 5, 2011.
2. The "Finn Knee" is a Licensed Product under the License Agreement, even though it does not have a third plane of motion.
3. The License Agreement did not terminate on March 31, 1999.
4. The License Agreement did not terminate because the License Agreement was not restricted to a three-plane knee, which Biomet was not selling.
5. Biomet is not entitled to restitution of the $200,000 in royalties it paid after March 31, 1999.
6. Biomet is not entitled to restitution of the $1.2 million in royalties it paid during the period 1989-1999.
7. Biomet must pay to ARCH an amount equal to the royalties that have accrued on sales of Licensed Products from July 1, 1999 through the date of judgment.

> 8. Biomet must continue paying royalties to ARCH until December 5, 2011 so long as it makes Licensed Product under the License Agreement, including the "Finn Knee."

Finally, the September Award stated that it represented a "full settlement of all claims and counterclaims submitted to this Arbitration. All claims and counterclaims not expressly granted herein are, hereby denied."

On October 2, 2002, Biomet requested clarification and/or modification of the September Award for several reasons, one of which was to correct the date from which royalties would begin accruing. On October 21, 2002, the Arbitrator modified the September Award, changing the royalty accrual date but denying Biomet's other requested changes. Biomet continued to pursue one issue, namely whether it was obligated to pay interest on the September Award because the Award did not expressly mention interest. Pursuant to the Arbitrator's direction, the parties submitted letter briefs to him on that issue. As noted, the September Award stated that the "entire License Agreement" would remain in effect until 2011. Section 3.7 of the License Agreement provides that Biomet must pay pre-judgment interest at 1% per month on overdue royalties. Consistent with that, on March 10, 2003, the Arbitrator issued an award (the "March Award"), clarifying that "Biomet must pay pre-judgment interest at the rate of one percent (1%) per month on the thirty-first day after the due date of each overdue payment as set forth in § 3.7 of the License Agreement."

Between the issuance of the September and the March Awards, Biomet filed, on December 12, 2002, a petition with this Court to vacate the September Award. However, Biomet did not serve ARCH with notice of the motion until ARCH filed a petition to confirm the September and March Awards on March 27, 2003. ARCH's petition was initially assigned to

4

Judge St. Eve. However, when Biomet subsequently moved under Local Rule 40.4 for reassignment of the later-filed case to my calendar, ARCH stipulated that the two cases are related and should be resolved together here.

Biomet's Petition to Vacate

Section 12 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 12, provides that "[n]otice of a motion to vacate . . . an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." "A party to an arbitration award who fails to comply with the statutory precondition of timely service of notice forfeits the right to judicial review of the award." *Piccolo v. Dain, Kalman & Quail, Inc.*, 641 F.2d 598, 600 (8th Cir. 1981); *accord Franco v. Prudential Bache Securities, Inc.*, 719 F.Supp. 63, 64 (D.P.R. 1989). Accordingly, if a party fails to serve notice of its court filing on the adverse party within three months after the award was issued, the motion must be dismissed as untimely. *Piccolo*, 641 F.2d at 600; *Franco*, 719 F.Supp. at 64; *Ultracashmere House, Ltd. v. Nordstrom, Inc.*, 123 F.R.D. 435, 436 (S.D.N.Y. 1988). That rule applies even if the motion to vacate was filed with the court within the three-month period. *Franco*, 719 F.Supp. at 65.

Here, Biomet's petition to vacate was first served on ARCH more than six months after the September Award was filed and more than four months after it was modified in October. The fact the parties sought to modify and then clarify the September Award is of no significance because the limitations period prescribed by § 12 is not tolled by the filing of an application to modify or clarify an arbitration award. *Fradella v. Petricca*, 183 F.3d 17, 20 (1st Cir. 1999). Accordingly, by the plain terms of § 12, Biomet's petition to vacate must be dismissed as

untimely. Even if this petition was not untimely, however, I would nevertheless dismiss it on the merits for reasons discussed below.

ARCH's Petition to Confirm

The FAA provides that, upon proper application of a petition to confirm an arbitration award, a federal court "must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. Confirming an arbitration award is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997) (quotation omitted). The FAA imposes a "heavy presumption" in favor of confirming arbitration awards. *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1288 (11th Cir. 2002). Accordingly, the scope of judicial action upon an arbitrator's award is "extremely limited." *Yasuda Fire & Marine Ins. Co. of Europe, Ltd. v. Continental Cas. Co.*, 37 F.3d 345, 349 (7th Cir. 1994). Indeed, the FAA requires that an arbitration award be confirmed unless one of four narrow exceptions applies:

1. where the award was procured by corruption, fraud or undue means;
2. when there was evident partiality or corruption in the arbitrators, or either of them;
3. where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
4. where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

In deciding whether to confirm an arbitration award, courts must not review the merits of the arbitrator's decision. *See, e.g., Flexible Mfg. Sys. Pty., Ltd. v. Super Prods. Corp.*, 86 F.3d 96, 99-100 (7th Cir. 1996). The court cannot second-guess an arbitrator's interpretation of a contract, but must treat such interpretations as "conclusive." *Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1194-95 (7th Cir. 1987). Indeed, a court cannot invalidate an arbitration award even if the award contains gross factual or legal errors. *Flexible Mfg.*, 86 F.3d at 100. Because the parties bargained for an arbitral decision, not a judicial resolution of their dispute, the court must confirm an arbitrator's award even if it contains such errors. *Hill*, 814 F.2d at 1194-95; *Flexible Mfg.*, 86 F.3d at 100.[1] Therefore, I must confirm the arbitration award here unless Biomet establishes that the award suffers from one of the narrow exceptions stated in § 10(a) of the FAA. Here, Biomet alleges that the Arbitrator: (1) exceeded his grant of authority under § 10(a)(4); and (2) engaged in misconduct under § 10(a)(3).[2]

---

[1] The Seventh Circuit has recently ruled that an arbitration award may be vacated for "manifest disregard of the law" only where the arbitrator actually directs the parties to violate the law. *See, e.g., IDS Life Ins. Co. v. Royal Alliance Assoc.*, 266 F.3d 645, 650 (7th Cir. 2001); *George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577, 580-81 (7th Cir. 2001). Similarly, the Seventh Circuit has held that "there is no judicial review of arbitration awards for legal error." *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 554-55 (7th Cir. 2002).

[2] Biomet additionally asserts that, in rendering his decision, the Arbitrator inappropriately considered certain "equitable considerations" that did not bear on the central issue in the case. However, Biomet cannot demonstrate that the Arbitrator's decision was based on such equitable considerations to the exclusion of the contractual language. To the contrary, the September Award expressly noted that "[t]he arbitration essentially revolves around the interpretation of [the] License Agreement[.]" The Award even listed the specific contractual provisions and definitions that the arbitrator found significant in deciding the matter. There is simply no evidence that the arbitrator deliberately disregarded the language of the contract or the applicable legal standards in favor of equitable considerations. Instead, the Award clearly indicated that the Arbitrator based the Award on the contract terms, and the fact that the Arbitrator inquired into equitable considerations is of no consequence. *See Action Distrib. Co. v. International Bhd. of Teamsters Local 1038*, 977 F.2d 1021 (6th Cir. 1992) (holding that

7

A court's inquiry under § 10(a)(4) "focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 220 (2d Cir. 2002) (quotation omitted); *accord American Postal Workers Union, AFL-CIO, Milwaukee Local v. Runyon*, 185 F.3d 832, 835-36 (7th Cir. 1999). In other words, a party may not "use issues of the arbitrator's authority as a ruse to obtain judicial review on the merits of an arbitral award." *Flender Corp. v. Techna-Quip Co.*, 953 F.2d 273, 278 (7th Cir. 1992) (quotation omitted). Biomet asserts that the Arbitrator exceeded his authority under § 10(a)(4) by not providing enough reasons for his decision and by issuing the March Award.

Regarding the first basis, Biomet claims it was entitled to receive – but did not get – a "reasoned award." Even if it is true that the parties did agree to a reasoned award,[3] neither their arbitration agreement nor the AAA rules define a "reasoned award." Accordingly, there is no definite standard a court could apply to determine whether the Arbitrator issued a reasoned award as agreed to by the parties. Nonetheless, the AAA scheduling form, to which Biomet points as

---

arbitrator's "references to equitable considerations [were] appropriate, and [did] not serve to abrogate the other bases for the award," where "[t]he contractual language provide[d] an ample basis for the arbitral decision" and where the arbitrator's interpretation of the agreement was not "clearly in direct conflict with or an additional requirement to the agreement.").

[3] I need not address whether the parties did indeed agree to a reasoned award because even if they did, I find that the award issued was a reasoned award. Were I to address this issue, however, it is doubtful that the parties formally agreed to any particular form of an award because the arbitration agreement was silent as to the form of the award and the AAA Rules do not require reasoned awards. Furthermore, AAA Rule 44 does apply because neither party requested a reasoned award prior to the Arbitrator's appointment. The only reference to a reasoned award appears on a scheduling order issued after the Arbitrator was appointed, but that is not sufficient under the AAA Rules to require a reasoned award. At best, the parties requested a reasoned award, but even if the Arbitrator failed to provide one, that cannot form the basis for vacating the award he made.

8

evidence of the agreement as to a reasoned award, provides three award alternatives: "Standard Award," "Reasoned Award," and "Findings of fact and conclusions of law." This is the order in which the alternatives are listed, and I interpret this arrangement to be a spectrum of increasingly reasoned awards. In other words, "Standard Award" is the option least involving reasoning whereas "Findings of fact and conclusions of law" is the option most involving reasoning. Logically, a "Reasoned Award" is therefore something short of findings and conclusions but more than a simple result. The question then becomes whether the Arbitration Award falls within this somewhat vague range. Here, the Arbitrator did more than simply state who wins and who loses in the form of a "bare" award. He cited the relevant contractual provisions and definitions. He explained that the License Agreement has not terminated because it "was not restricted to a three-plane knee, which Biomet was not selling" and thus plainly rejected Biomet's main argument. Finally, he listed eight findings and conclusions that he made. In sum, it cannot be said that the September Award was devoid of explanation and thus not a reasoned award.[4] Accordingly, I find that the Arbitrator has not exceeded his authority on this basis.

Biomet claims that the Arbitrator also exceeded his authority when, in the March Award, he improperly "reversed" a portion of the September Award by granting ARCH interest. As way of background, after the Arbitrator issued the September Award, a dispute arose between the parties regarding whether the Award should be interpreted to include interest on the unpaid

---

[4] Even if the September Award were not a reasoned award by some unstated definition, that does not provide a basis on which it can be vacated. Biomet has cited no cases supporting the proposition that failure to provide a reasoned award is a basis for vacating an award. Further, failure to provide a reasoned award cannot form the basis for finding that the Arbitrator exceeded his powers. Indeed, it is very strange to assert that an arbitrator has *exceeded* his powers by not doing enough.

amount. The September Award stated that the "entire License Agreement" would remain in effect until 2011. Section 3.7 of the License Agreement provides that Biomet must pay interest at 1% per month on overdue royalties. Consistent with that, on March 10, 2003, the Arbitrator issued a Supplemental Award clarifying that "Biomet must pay pre-judgment interest at the rate of one percent (1%) per month on the thirty-first day after the due date of each overdue payment as set forth in § 3.78 of the License Agreement."

According to Biomet, ARCH's request for this "modification" was untimely pursuant to AAA Rule 48, which requires a request for modification of an award to be made by any party "[w]ithin 20 days after transmittal of an award." However, I find that the March Award merely made explicit what was already required by the September Award. Contrary to Biomet's suggestion, the March Award did not modify the requirements of the September Award; it merely resolved an interpretive dispute by clarifying the scope of that award.

Nonetheless, Biomet further claims that Rule 48 only permits the correction of "clerical, typographical, or computational errors." However, as a general rule, an arbitrator has authority to issue a supplemental award clarifying or explaining an original award. *See Glass, Molders, Pottery, Plastics and Allied Workers Int'l Union v. Excelsior Foundry Co.*, 56 F.3d 844, 847 (7th Cir. 1995); *Courier-Citizen Co. v. Boston Electrotypers Union No. 11, Int'l Printing & Graphic Communications Union of N. Am.*, 702 F.2d 273, 279 (1st Cir. 1983); *Spector v. Torenberg*, 852 F.Supp. 201, 208 (S.D.N.Y. 1994); *American Centennial Ins. Co. v. Arion Ins. Co., Ltd.*, No. 88 CIV 1665 (RWS), 1990 WL 52295, at *6 (S.D.N.Y. 1990). In addition, by clarifying the September Award, the Arbitrator did in advance what he would eventually have had to do in any event because under the FAA, if an arbitration award is in any way unclear or ambiguous, a court should remand the issue to the arbitrator for clarification. *Publicis Communication v. True North*

*Communications*, 206 F.3d 725, 730 (7th Cir. 2000); *Office & Prof. Employees Int'l Union, Local 471 v. Brownsville Gen. Hosp.*, 186 F.3d 326, 331 (3d Cir. 1999). Therefore, it was perfectly appropriate for the Arbitrator to issue the March Award clarifying that the September Award included interest because the issuance of the March Award merely resolved a dispute between the parties regarding the proper interpretation of the September Award. Accordingly, the March Award was well within the Arbitrator's authority.

Along with the § 10(a)(4) claim, Biomet contends that the Arbitrator engaged in "misconduct" under § 10(a)(3) by purportedly failing to "hear or consider evidence" related to Biomet's counterclaim for a declaratory judgment that it was not infringing the '701 patent and its related infringement defenses. However, the Arbitrator did rule on Biomet's counterclaim when he expressly denied "all claims and counterclaims not expressly granted herein." That language "gives rise to a heavy presumption that the arbitrator[] in fact did address all the claims presented in [the parties'] statement of claims." *Forest Elec. Corp. v. HCB Contractors*, No. CIV. A. 91-1732, CIV. A. 91-5350, 1995 WL 37586 at *6 (E.D. Pa. Jan. 30, 1995), aff'd, 92 F.3d 1171 (3d Cir. 1996); *see also Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 150 (4th Cir. 1994). Contrary to Biomet's assertion, the mere fact that the Arbitrator rejected Biomet's defense does not establish that he failed to consider it. Second, even if the Arbitrator failed to hear or consider the aforementioned evidence regarding patent infringement, such neglect does not constitute misconduct because there was never an "actual controversy" between the parties regarding patent infringement. *See, e.g., International Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1214 (7th Cir. 1980) (finding no justiciable controversy supporting issuance of declaratory judgment of noninfringement where plaintiff did not establish any reasonable apprehension of infringement suit); *see also Ballard Medical Prods. v. Wright*, 823 F.2d 527, 531-32 (Fed. Cir.

1987) (affirming district court's determination that arbitrators were "in no sense 'guilty of misconduct' in refusing to hear evidence regarding the validity of [defendant's] patents for the simple reason that their *validity was never in issue in the arbitration* and hence not 'pertinent and material' to the controversy between the parties") (emphasis in original). Finally, at no time did the Arbitrator ever deny Biomet the opportunity to present evidence in support of its theory of defense. Accordingly, the Arbitrator did not engage in "misconduct" under § 10(a)(3).

For the above reasons, Biomet's Petition to Vacate the Arbitration Awards is DENIED and ARCH's Petition to Confirm the Arbitration Awards is GRANTED.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: 28 July 2003